*PH*

CERTIFIED COPY

# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 06-3779 & 06-4169



e360 INSIGHT, an Illinois
Limited Liability Co., and
DAVID LINHARDT,

SEP 21, 2007

SEP 2 1 2007

*Plaintiffs-Appellees,*

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

THE SPAMHAUS PROJECT,
a Company Limited by Guarantee
and Organized Under the Laws
of England also known as
THE SPAMHAUS PROJECT, LIMITED,

*Defendant-Appellant.*

---

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 3958—Charles P. Kocoras, *Judge.*

---

ARGUED JUNE 6, 2007—DECIDED AUGUST 30, 2007

---

Before RIPPLE, KANNE and EVANS, *Circuit Judges.*

RIPPLE, *Circuit Judge.* e360 Insight, LLC, and David Linhardt (collectively, "e360") brought this action in the Cook County Circuit Court, alleging various tort claims against The Spamhaus Project ("Spamhaus"). Spamhaus removed the case to the United States District Court for

the Northern District of Illinois. Spamhaus answered the complaint and then, one month later, in open court, moved to withdraw its answer. The court granted that motion, as well as a motion by Spamhaus' counsel to withdraw. Because Spamhaus had elected not to defend the action, the court also entered a default, issued a preliminary injunction and requested evidence from e360 to support a default judgment against Spamhaus. Upon receiving e360's response, the court entered judgment, awarding to e360 $11,715,000 in damages, plus costs, and a permanent injunction. Spamhaus, then represented by new counsel, challenged the judgment in a Rule 60(b) motion to the district court. That motion was denied. Spamhaus timely appeals both the default judgment and the district court's denial of its Rule 60(b) motion. For the reasons stated in this opinion, we affirm the entry of a default judgment, but vacate the award of damages and injunctive relief and remand for further proceedings consistent with this opinion.

# I

## BACKGROUND

### A. Facts

Spamhaus is a non-profit company limited by guarantee and organized under the laws of the United Kingdom. It is an internet watchdog group in the business of identifying and blocking internet "spam," or unsolicited bulk e-mail. In that capacity, it maintains the "Register Of Known Spam Operations" ("ROKSO"), a "3 strikes list" for internet users it believes are responsible for creating and distributing spam messages. R.1, Ex. A at 4. Through the ROKSO, Spamhaus publishes a sort of blacklist of persons or

businesses that have been thrown off a minimum of three internet service providers ("ISPs") for violating the terms of use of the ISP; Spamhaus classifies persons or entities who have had at least "three strikes" as "spammers." Although the process is not entirely clear from the record, it appears that ISPs can access Spamhaus' ROKSO list (either directly or through the use of other anti-spam databases into which the ROKSO is integrated); if an ISP then elects, it can employ the ROKSO as part of its own screening process for incoming messages directed to its customers—its "spam filter." That is, an ISP could see that a particular internet protocol ("IP") address had been marked as a spammer on Spamhaus' ROKSO and then, as a result, might refuse to allow a message sent from that IP address to reach the e-mail's intended recipient.

e360 is an internet marketing company operated by David Linhardt out of Wheeling, Illinois. e360 maintains that, at the time it was listed on the ROKSO, it never had been excluded by an ISP. It also claims that it operates in accordance with ISP terms of use and within all applicable laws. e360 uses e-mail to market products for other businesses. The value of its service to the businesses it represents lies in its ability to reach potential individual customers for those businesses via e-mail.

In December 2003, Spamhaus placed e360 Insight, LLC, and Mr. Linhardt on the ROKSO list. e360 claims that it contacted Spamhaus to inform it that a mistake had been made, but nevertheless it remains on the ROKSO list. e360 also claims that Spamhaus cross-lists businesses who partner with companies and individuals on the ROKSO list and refuses to remove these partners from the blacklist until they terminate their relationship with the primary spammer on the ROKSO list.

### B. District Court Proceedings

e360 brought this action in state court, claiming that Spamhaus was liable in tort for losses e360 suffered as a result of its placement on the ROKSO. Specifically, the complaint alleged that Spamhaus' placing e360 on the ROKSO list amounted to tortious interference with contractual relations, tortious interference with prospective economic advantage, defamation per se and defamation quod. It sought compensatory and punitive damages, as well as an injunction requiring Spamhaus both to remove e360 from the list and to place a notice on the Spamhaus website that e360 had been included on the ROKSO list in error.

Spamhaus removed the case to the district court on the basis of diversity of citizenship. Spamhaus then answered the complaint on July 21, 2006. In that answer, it denied many of e360's allegations and asserted fourteen affirmative defenses. Among those defenses were lack of personal jurisdiction, insufficient process and insufficient service of process. R.6 at 8.

On August 23, 2006, counsel for both sides appeared before the district court at a status call. The court began addressing the issue of diversity of citizenship when then-counsel for Spamhaus interrupted the court and the following exchange ensued:

> MR. BROWN [then-counsel for Spamhaus]: Your Honor, if I may, before we get too far down what we are talking about here today, I have been authorized by my client to do precisely two things here this morning; and, I do acknowledge that it is a bit of an unconventional maneuver. My client wants to—
>
> THE COURT: You represent who?

MR. BROWN: The defendant—

THE COURT: Okay.

MR. BROWN: Spamhaus.

And my client wants to participate in the defense no further.

I am not authorized to do anything more today than to ask this Court that the answer be withdrawn; and, then, once we hear from this Court on that, to get a ruling on our motion to withdraw as counsel.

[the Court engages counsel for the plaintiffs.]

THE COURT: All right.

Do you know whether your client has another law firm in hand or what their position is?

MR. BROWN: My position—or my understanding—from them is that they want to do absolutely nothing.

So, I don't know for certain—

THE COURT: Do they want to lose?

I mean, that is what is on the horizon if they want to do nothing. You have to defend the case.

MR. BROWN: They have been fully informed of the fact that the default judgment is a real possibility. And they are aware of that and are prepared to take that risk.

[exchange regarding motion to withdraw as counsel]

THE COURT: Okay.

Here is what we are going to do. I am going to give you leave to withdraw the answer; I am going to give

you leave to withdraw; and, in light of the fact that your client is aware of that—and, apparently, has sent no one here to disagree with the request to withdraw; and, I assume you told them it was a dead-bang certainty that default is going to be entered without any resistance to the lawsuit—I am going to enter a default order today.

[court reinstates TRO entered in state court]

THE COURT: [granting the motion to withdraw as counsel]

And I will ask you, as your, if not your final act, at least approaching finality, to let you[r] client know what happened this morning. And tell them it is not just a risk that they will lose the case, but it is a dead-bang certainty. And the first step has been undertaken with the entry of a default.

But no judgment, just a default. Okay?

R.56-1 at 2-3, 6-7.

A week later, e360 filed a motion for a default judgment, supported by an affidavit from Mr. Linhardt that stated the amounts in which he believed his business had been harmed by being placed on the ROKSO. On September 13, 2006, the district court entered judgment and awarded the full amount of compensatory damages stated in Mr. Linhardt's affidavit, $11,715,000.00, as well as $1,917.50 in costs. It denied attorney's fees and punitive damages. The court also entered a permanent injunction, the details of which we shall examine shortly.

Spamhaus filed a timely Rule 60(b) motion to vacate the default and the default judgment. At the hearing on that motion, new counsel for Spamhaus articulated several

bases for the motion. First, Spamhaus reasserted its challenge to "the fundamental power of the Court to exercise jurisdiction for default or other purposes over a UK-based Internet company." R.56-4 at 7. According to Spamhaus, that defense could be "independently raise[d], [and] ha[d] nothing to do with whether the attorney appeared . . . or not. Because when they did appear, they properly asserted these defenses." *Id.* at 7. Spamhaus also advised the district court that it had received conflicting legal advice and that its instruction that prior counsel withdraw was based on a misunderstanding of the applicable law. Finally, Spamhaus raised various objections to the propriety of the specific relief awarded. The district court gave the following response:

> I do not think there was anything unknowing or unintentional about the decision made not to defend this case once it got over here at some point. . . .
>
> . . . [T]he idea that Rule 60 accommodates at least what may have seemed at the time an intelligent decision—and an intentional one—should be used to reopen the consequence of the decision, knowingly made, I am not sure that is what Rule 60 is about.
>
> Secondly, yes, we do have to have jurisdiction over subject matter, as well as the person or presence of a defendant in the first instance. There is no question about that.
>
> That was apparently, you say, pressed by way of an affirmative defense—or, at least, it was suggested as an affirmative defense, but not pressed.
>
> . . . .
>
> We do not undertake to take one side of a case and look for, as meticulously as we can, for holes in the

conduct of the party seeking some relief because the other side has failed to defend this case, or at least chose to abandon the defense of the case.

. . . .

So, I think it would be unfair to the plaintiff at this point to, if you will, pretend as if none of these things took place before; no opportunity to defend this case; no decision made to knowingly abandon the defense; and, then, start over and give somebody a brand new track.

*Id.* at 8-10. Although briefing was requested by Spamhaus, the court immediately denied the motion.[1]

Spamhaus timely appealed both the entry of default judgment and the denial of its Rule 60(b) motion to vacate that judgment.

## II

## DISCUSSION

Spamhaus raises many challenges to the district court's entry of default judgment, the character of the relief awarded and the failure of the court to grant its Rule 60(b) motion and to reopen for factual development certain of the issues decided in the default. Specifically, Spamhaus challenges the district court's authority to enter a default judgment without affirmatively inquiring into the factual basis for personal jurisdiction and effective service.

---

[1] Spamhaus also had moved to quash a citation to discover assets, arguing again the defense of lack of jurisdiction and improper service. The court responded simply: "That defense will not carry the day." R.56-4 at 11.

Spamhaus also claims that it may assert lack of jurisdiction
and improper service in this court and be relieved of the
default judgment. On the question of the specific relief
awarded, Spamhaus challenges the district court's calcu-
lation of damages based on Mr. Linhardt's affidavit alone.
It also challenges the grant of injunctive relief and claims
that, as written, the injunction violates the First Amend-
ment and is overbroad.

## A. Validity of the Default

We review both the district court's decision to enter a
default judgment and the denial of a motion to vacate
the judgment for an abuse of discretion. *Homer v. Jones-
Bey*, 415 F.3d 748, 753 (7th Cir. 2005).

### 1. Personal Jurisdiction and Service

Default judgments rendered without personal jurisdic-
tion are void and, therefore, we shall "set aside a default
judgment as a *per se* abuse of discretion if the district court
that entered the judgment lacked jurisdiction." *Swaim v.
Moltan Co.*, 73 F.3d 711, 716 (7th Cir. 1996); *see also Homer*,
415 F.3d at 753; *Robinson Eng'g Co. Pension Plan & Trust v.
George*, 223 F.3d 445, 448 (7th Cir. 2000); *Bally Export Corp.
v. Balicar, Ltd.*, 804 F.2d 398, 400 (7th Cir. 1986).

In support of its argument that the judgment is void,
Spamhaus contends that the district court abused its
discretion in entering judgment without *first* conducting an
affirmative inquiry into whether it had personal jurisdic-
tion over Spamhaus and whether service of process was
effected in compliance with applicable rules. Spamhaus
concedes that this court has not imposed an affirmative
duty on the district court to inquire into the factual bases

for jurisdiction or service prior to entering a default. Instead, at oral argument, Spamhaus asked this court to craft a special rule, applicable in cases involving a foreign, not-for-profit, internet-based defendant. Such a rule is justified, claims Spamhaus, by the emerging jurisprudence on internet-based entities and personal jurisdiction and by a series of other cases in which other courts have imposed such a duty in cases involving foreign defendants.[2]

The cases on which Spamhaus relies involve foreign defendants who had not appeared in the action. *See Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) ("[A] district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party *who has not appeared* in the case." (emphasis added)). We need not decide whether we would impose the same rule on district courts in this circuit if faced with that situation because it is not the one we face here: Spamhaus removed the case, actually appeared through counsel in federal court and filed an answer specifically challenging personal jurisdiction.[3]

---

[2] Spamhaus relies on *System Pipe & Supply, Inc. v. M/K Viktor Kurnatovsky*, 242 F.3d 322, 324 (5th Cir. 2001), *Tuli v. Republic of Iraq*, 172 F.3d 707, 712 (9th Cir. 1999), and *Dennis Garberg & Associates, Inc. v. Pack-Tech International Corp.*, 115 F.3d 767, 771 (10th Cir. 1991), as well as several district court cases from within this circuit in which personal jurisdiction was examined by the court sua sponte prior to entering a default judgment.

[3] Indeed, Spamhaus alternately asks this court to treat it as an appearing party; as we shall examine shortly, Spamhaus urges
(continued...)

We see no reason to require the district court to raise sua sponte affirmative defenses, which may, of course, be waived or forfeited, on behalf of an appearing party who elects not to pursue those defenses for itself. *See TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 589 (7th Cir. 2005) (noting that personal jurisdiction may be waived). For similar reasons, we do not believe that the district court was obligated to consider the validity of the judgment on jurisdictional grounds in its ruling on the Rule 60(b) motion. Nor do we see any reason why this court should reexamine the issue of personal jurisdiction. We acknowledge that under Rule 60(b)(4), a party generally may challenge a default judgment as void for lack of personal jurisdiction at any time. *See Swaim*, 73 F.3d at 717 (noting that this rule "recognizes that it is unfair to strip parties of a defense that may explain the omission that is potentially the basis for judgment against them"). However, that general rule does not preserve in perpetuity a party's claim regarding personal jurisdiction, regardless of any strategy it pursues in the district court.

As is clear from its oral ruling on Spamhaus' 60(b) motion, the district court interpreted its conduct preceding default as a waiver of the previously asserted defenses. *See* R.56-4 at 10 (noting that the court would not "pretend as if none of these things took place . . . [and there had been] no opportunity to defend this case[,] no decision made to knowingly abandon the defense"); *id.* at 8-9

---

[3] (...continued)

this court to hold that a supposed failure of the plaintiff to comply with certain notice requirements of Federal Rule of Civil Procedure 55(b)(2), which apply *only* where the defendant "has appeared in the action," requires reversal.

("[T]he idea that Rule 60 accommodates at least what may
have seemed at the time an intelligent decision—and an
intentional one—should be used to reopen the consequence
of the decision, knowingly made, I am not sure that is what
Rule 60 is about. . . . [Spamhaus] chose to abandon the
defense of the case."). We review the factual determina-
tions upon which a district court predicates a finding
of waiver for clear error and the legal question of wheth-
er the conduct amounts to waiver de novo. *Ernst & Young
LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th
Cir. 2002).

   We perceive no error in the district court's conclusion
that Spamhaus intentionally elected to abandon its avail-
able defenses when it withdrew those defenses from
consideration by the court and indicated that it was
prepared to accept a default. Spamhaus' then-counsel
confirmed that it wished to "participate in the defense no
further" and "do absolutely nothing." *See* R.56-1 at 3, 5. It
was not erroneous to treat this kind of voluntary abandon-
ment of defenses, raised but not pursued, as a waiver. *See
Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *Trs. of Cent.
Laborers' Welfare Fund v. Lowery*, 924 F.2d 731, 732-33 (7th
Cir. 1991) (noting that courts have recognized "privileged
defenses referred to in Rule 12(h)(1)[] may be waived by
'formal submission in a cause, or by submission through
conduct,' " even before an answer is filed (quoting *Marcial
Ucin, S.A. v. SS Galicia*, 723 F.2d 994, 996-97 (1st Cir. 1983)).
Based on its conduct before the court, we have no doubt
that Spamhaus understood the defenses available to it,
consistently asserted those defenses in the early stages of
those proceedings and then affirmatively elected to aban-
don those defenses before the district court. We see no
reason to allow Spamhaus to escape the consequences of

that decision in the later stages of this proceeding.[4]

### 2. Notice of the Default Judgment

Spamhaus also claims that the default judgment entered was invalid because Spamhaus was not served with the written notice of the application for a default judgment as provided by Federal Rule of Civil Procedure 55(b)(2)[5] and

---

[4] Spamhaus also claims that the district court had an affirmative obligation to find that the complaint was served consistent with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, *opened for signature* Nov. 15, 1965, 20 U.S.T. 361 (appended to Fed. R. Civ. P. 4). Specifically, Spamhaus relies on Article 15 of the Convention, which provides, in pertinent part: "Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established" that service was effected in a manner approved of by the Convention. The difficulty for Spamhaus is that, as we already have determined, it is not a defendant that "has not appeared." It did appear in the action and raise improper service of process under the Hague Convention as an affirmative defense. It withdrew that defense along with the answer. Article 15, by its terms, does not apply to a party who has appeared. The court did not have an affirmative obligation, under these circumstances, to raise service of process on behalf of Spamhaus prior to entering the default.

[5] Rule 55(b)(2) provides, in pertinent part:

> If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written
> (continued...)

in a manner approved by Rule 5. Our review of the sufficiency of service of notice of a motion for a default judgment is de novo. *Homer*, 415 F.3d at 753. Spamhaus requests a remand to determine whether, as a factual matter, service was proper.

A certificate of service attached to the motion for default and signed by an attorney for e360 states that service of the motion was effected in three ways: (1) electronic filing with the clerk of the court, "which will send notification of such filing" to listed attorneys with the firm that formerly represented Spamhaus; (2) "Federal Express via International Priority"; and (3) "caus[ing] to be hand delivered" to the Spamhaus Project. R.20 at 6. Under Local Rule 5.5(a)(1), this certification made by an attorney of record qualifies as proof of service. Accordingly, the remaining question is whether any of these methods of service was acceptable under Rule 5 of the Federal Rules.

Federal Rule of Civil Procedure 5 lists the acceptable methods of service of process under the Federal Rules. Included among the acceptable forms of service is:

(A) Delivering a copy to the person served by:

(i) handing it to the person;

(ii) leaving it at the person's office with a clerk or other person in charge, or if no one is in charge leaving it in a conspicuous place in the office; or

---

[5] (...continued)
*notice of the application for judgment at least 3 days prior to the hearing on such application.*

(emphasis added).

> (iii) if the person has no office or the office is
> closed, leaving it at the person's dwelling house or
> usual place of abode with someone of suitable age
> and discretion residing there.

Fed. R. Civ. P. 5(b)(2)(A). In-hand delivery is, therefore, a
specifically approved method of service under the Rules.
Spamhaus' conclusory allegation that "no authorized
representative of Spamhaus has ever been properly served
with in-hand delivery of any document," Appellant's Br. at
17, without more, does not defeat the proof of service
provided to the district court, nor does it require this
court to remand to allow further factual development in the
face of a certificate of service by an officer of the court. Nor
has Spamhaus cited any precedent in support of its conten-
tion that the record must contain more specific evidence
"demonstrating how . . . service was purportedly per-
fected." *Id.* at 16-17.

Moreover, although a party is not required to file a
Rule 60(b) motion in the district court to raise challenges
to the entry of a default judgment, this court has recog-
nized that when a party does so, the failure to raise certain
defenses specifically may waive those defenses for pur-
poses of appeal of the underlying judgment. *See Swaim*, 73
F.3d at 718-19. Although our cases applying this rule have
dealt with issues of personal jurisdiction, service to bring
a party into the action and capacity to be sued, *id.*, the logic
employed in those cases applies with equal force to the
particular defense of failure of notice under Rule 55(b). In
each case, the request made on appeal from the underly-
ing default judgment is that we remand for factual find-
ings that would justify relief from the judgment because
the district court has the special competence to make those
findings of fact. *See id.* Sensibly, then, when a party chooses
to move for relief from judgment under Rule 60(b) in the

district court, that party should raise those defenses which require factual development that it anticipates raising in an appeal taken from the underlying judgment. As we stated in *Swaim v. Moltan Co.*, 73 F.3d 711 (7th Cir. 1996), this approach

> promotes the twin concerns of juridical efficiency and respect for the unique factfinding capability of a district court. . . . This is not to deny our jurisdiction to entertain a direct appeal from a default judgment, *see* 28 U.S.C. § 1291, but when a party chooses to utilize the attention and limited resources of a district court in a motion under Rule 60(b), we think it just and proper that it be required to put before the district court whatever infirmities support setting aside the default judgment. This brings to bear the district court's factfinding function and unique knowledge of the case and maintains the court of appeals' role as a forum for resolving disputed questions of law—not fact.

*Id.* at 719. In its 60(b) motion in this case, Spamhaus never asserted that e360 had failed to comply with the notice requirements of Rule 55 and that this failure justified relief from judgment. Its only contention regarding service of process was a failure of service to bring it into the case, in connection with its argument that the district court lacked in personam jurisdiction. Spamhaus now seeks an opportunity to offer countervailing proof on the issue of service of the motion for default judgment; that is an argument that Spamhaus should have addressed to the district court in the first instance when, as here, a Rule 60(b) motion challenging the default judgment also was filed.

Because the jurisdictional challenges Spamhaus now seeks to raise have been waived and neither the district court nor this court has the duty to resurrect them, the district court did not abuse its discretion in entering judgment of liability nor in denying the motion for Rule 60(b) relief. Accordingly, we affirm the district court's judgment on liability.

## B. Remedial Issues

Spamhaus asserts that the district court erred in entering judgment in an amount of more than $11 million on the basis of Mr. Linhardt's affidavit alone. It also cites a host of objections to the district court's entry of injunctive relief. We consider each of its objections in turn.

### 1. Damages

As we have noted, at the hearing in which Spamhaus withdrew its answer and prior counsel withdrew their appearance, the district court informed e360 that it would be required to prove up its damages. At minimum, according to the court, the affidavit of a knowledgeable person would be required. In response, e360 filed a formal motion for default judgment and attached Mr. Linhardt's affidavit. In his affidavit, Mr. Linhardt stated that e360 had lost "actual and pending contracts," the value of which he had calculated to be $2,465,000. R.20, Ex. A at 6. He further stated that he had lost "numerous opportunities to obtain future work" and that he had calculated "the lost value of the business as a result of the inability to monetize the revenue potential from the company and in the lost enterprise value to be at least $9,250,000." *Id.* He then

18

provided a cursory statement of his calculation of the lost value to his enterprise. On the basis of this evidence, the district court entered judgment for compensatory damages in the full amount requested, more than $11 million.

Generally, this court will not reverse a damages award in a default judgment unless it is clearly excessive. *Merrill Lynch Mortgage Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990). A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). We also have stated, however, that

> [e]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.

*In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). Under the law of this circuit, judgment by default may not be entered without a hearing on damages unless "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) (collecting authority).

Mr. Linhardt's affidavit is a conclusory statement of the lost value of his business, based largely on his calculations of lost future profits. It provides a list of businesses involved in "actual and pending contracts" and a total calculation of his calculation of loss, but says nothing

about the status of his relationship with those businesses
before e360 was listed on the ROKSO. That is, the affidavit
claims profit loss in absolute numbers, but provides no
information whatsoever to support a finding that such
future profits were certain prior to Spamhaus' act. Particu-
larly given the difficulties that Illinois courts have acknowl-
edged in proving non-speculative amounts of lost future
profits, *see, e.g., SK Hand Tool Corp. v. Dresser Indus., Inc.*,
672 N.E.2d 341, 348 (Ill. App. Ct. 1996); *see also TAS Distrib.
Co. v. Cummins Engine Co.*, ___ F.3d ___, 2007 WL 1704114,
No. 05-1371, slip op. at 12-16, (7th Cir. June 14, 2007)
(collecting Illinois authority on the difficulty of proving
lost future profits as damages), this affidavit alone can-
not provide the requisite "reasonable certainty" for a
damages award without the necessity of a hearing.[6] We
therefore vacate the damages award and remand to the
district court for a more extensive inquiry into the dam-
ages to which e360 is entitled.

## 2. Injunctive Relief

Spamhaus also raises a number of challenges to the
district court's entry of a permanent injunction. Under the
terms of the injunction, Spamhaus is prohibited from

---

[6] We do not believe that the fact that the district court declined
the request for punitive damages and attorney's fees demon-
strates, as e360 asserts, that it undertook an adequate evaluation
of the evidence of damages presented to it. As is made clear
by the court's order, it believed that absent countervailing
evidence from Spamhaus, the affidavit justified the full amount
of compensatory damages requested. Given the nature of the
damages sought and the conclusory statements in the affidavit,
we cannot say that this scrutiny was sufficient.

Nos. 06-3779 & 06-4169

(1) "tak[ing] any action to cause email sent by Plaintiffs or
their affiliates, subsidiaries, or related companies owned or
controlled by Plaintiffs to be blocked, delayed, altered, or
interrupted in any way, (including, without limitation, by
listing Plaintiff's [sic] on Spamhaus' ROKSO list . . . ) un-
less Spamhaus can demonstrate by clear and convincing
evidence that Plaintiffs have violated relevant United States
law"; (2) listing other networks owned or operated by e360
as spammers without demonstrating that the clear and
convincing standard had been met; and (3) contacting "any
customers or suppliers" of e360 "in efforts to cause said
customers or suppliers to cease doing business" with e360
or to "allege or assert that Plaintiffs are spammers or other
like term." R.24 at 2. The injunction also requires that
Spamhaus post a notice on its website that e360 was
erroneously listed as a spammer and that it is not a
spammer. The language of this notice was to be approved
by e360, was to occupy a one inch by one inch space on the
website and was to remain in place for six months. *See id.*

We review the court's entry of a permanent injunction
for an abuse of discretion. *eBay Inc. v. MercExchange, L.L.C.,*
126 S. Ct. 1837, 1839 (2006).

### a.

First, Spamhaus contends that the district court's entry
of a permanent injunction should be vacated because the
court never considered whether injunctive relief was
appropriate and, in its order granting such relief, failed to
comply with Rule 65 in setting forth reasons for its issu-
ance. *See* Fed. R. Civ. P. 65(d).

As we already have stated, although a default judgment
establishes liability, it does not answer whether any

particular remedy is appropriate. *See Di Mucci,* 879 F.2d at 1497 ("Because . . . liability was established by default, the law in this circuit indicates that in a case such as this, *an evidentiary hearing may be required to establish what type of relief is necessary.*" (emphasis added)). This principle applies with equal if not greater force in the context of equitable relief, for which the law imposes a requirement that the party seeking the injunction demonstrate the inadequacy of legal relief. *See Walgreen Co. v. Sara Creek Property Co., B.V.,* 966 F.2d 273, 275 (7th Cir. 1992) ("The plaintiff who seeks an injunction has the burden of persuasion--damages are the norm, so the plaintiff must show why his case is abnormal. . . . [W]hen, as in this case, the issue is whether to grant a permanent injunction . . . the burden is to show that damages are inadequate . . . .").

The district court concluded that e360's success by default and the failure of Spamhaus to interpose objections to relief simply entitled e360 to a permanent injunction. We conclude that a more substantial inquiry by the district court was necessary prior to the entry of equitable relief. *See eBay,* 126 S. Ct. at 1839 ("According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."); *see also* Fed. R. Civ. P. 65(d) ("Every order granting an injunction and every restraining order shall set forth the reasons for its issuance . . . .").

Absent some statement explaining the necessity of injunctive relief, we are hampered in our review of the district court's exercise of its equitable powers. *See United States v. Jordan*, 485 F.3d 982, 985 (7th Cir. 2007) (noting that, for the Court of Appeals to exercise properly its review function over a discretionary determination, "the record should reflect an exercise of discretion based on the evidence and the applicable legal standard"); *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005) ("[W]henever a district judge is required to make a discretionary ruling that is subject to appellate review, we have to satisfy ourselves, before we can conclude that the judge did not abuse his discretion, that he exercised his discretion, that is, that he considered the factors relevant to that exercise.").[7] The proceedings leading to the entry of the injunction were deficient, and, therefore, remand is necessary for the district court to consider the propriety of any injunctive relief.

### b.

As currently written, the injunction suffers from independent legal infirmities. It fails to comply with "the rule

---

[7] The origin of the injunctive relief was a temporary restraining order ("TRO") issued in state court before the case was removed. We are unpersuaded by e360's contention that, because the state court conducted an appropriate inquiry, no independent inquiry into the propriety of injunctive relief was required of the district court before issuing a preliminary and then a permanent injunction. In any event, the state proceedings, aside from the TRO itself, are not of record in this matter, and we see no evidence in the record that indicates that they were fully before the district court.

requiring courts to tailor injunctive relief to the scope of the
violation found." *Nat'l Org. for Women, Inc. v. Scheidler*,
396 F.3d 807, 817 (7th Cir. 2005), *rev'd on other grounds*, 547
U.S. 9, 23 (2006). On its face, the relief awarded does not
bear a legitimate relationship to the facts necessary to
support the entry of a default judgment.

In our evaluation of the injunction, we are mindful that
it followed a default judgment, and, therefore, we take as
true the facts of the complaint. *See Black v. Lane*, 22 F.3d
1395, 1399 (7th Cir. 1994). In this case, the facts upon
which the judgment is supported demonstrate only that
at the time that Spamhaus *initially* posted that e360 was a
"spammer"—the posting upon which the cause of action
was based—the posting was false. That the label was
false when originally posted does not mean that, apply-
ing Spamhaus' generally applicable criteria for determin-
ing what a spammer is, e360 ought to be given a free pass
for all time. Rather, it simply means that, whatever the
initial factual basis Spamhaus had used to list e360 on the
ROKSO, Spamhaus may not rely on that basis in the future.
If Spamhaus were to discover additional evidence that
e360 meets the ROKSO criteria and subsequently were to
place e360 on the ROKSO on the basis of that new evidence,
Spamhaus would be entitled to a separate judicial determi-
nation that this *new* label is in fact false and that it is liable
for defamation. An injunction that bars Spamhaus from
referring to e360 as a spammer prospectively, without
taking account of the actual grounds for liability in this
action, is not tailored to the scope of the violation. For the
same reason, the injunction's requirement that Spamhaus
post notice to the effect that e360 *is not* a spammer cannot
be sustained. Whether e360 *is now* a spammer is not a fact
determined by the default judgment. The fact determined

by the judgment is that e360 *was not* a spammer when Spamhaus so identified it on the date of the action giving rise to the complaint.

The injunction as written would allow Spamhaus, under certain circumstances, to place e360 on the ROKSO in the future. Those circumstances, however, are an insufficient answer to the overbreadth of the injunction because they too bear no reasonable relationship to the facts of liability. Specifically, the injunction states that Spamhaus may designate e360 as a spammer if Spamhaus can demonstrate by "clear and convincing evidence" that e360 has violated "United States law." According to the complaint, however, Spamhaus lists entities on the ROKSO for violating ISP terms of use, not "United States law." The complaint does not allege that Spamhaus defamed e360 by claiming that e360 operated in violation of law. The facts supporting the default judgment, therefore, show only that e360 improperly was listed as a "spammer" by Spamhaus, applying Spamhaus' own criteria. There is no basis in the judgment for an injunction that modifies Spamhaus' generally applicable criteria for determining what entities qualify as spammers. Moreover, the injunction places the burden on Spamhaus to prove the legitimacy of future statements through the lens of the clear and convincing standard; this formulation effectively presumes that Spamhaus' future conduct is tortious before there has been any opportunity for an appropriate judicial inquiry.

Finally, although we decline to address them fully in the context of this injunction that we already have determined cannot stand, we note that there are sensitive First Amendment issues presented in the context of permanent injunctions in defamation actions. *See generally* Erwin

Chemerinsky, *Injunctions in Defamation Cases*, 57 Syracuse L. Rev. 157 (2007) (arguing from tradition and precedent that permanent injunctive relief should never be available as a remedy in a defamation action). "[P]ermanent injunctions—*i.e.*, court orders that actually forbid speech activities—are classic examples of prior restraints." *Alexander v. United States*, 509 U.S. 544, 550 (1993); *see also United States v. Raymond*, 228 F.3d 804, 815 (7th Cir. 2000). Accordingly, "[t]he usual rule is that 'equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages.'" *Cmty. for Creative Non-Violence v. Pierce*, 814 F.2d 663, 672 (D.C. Cir. 1987) (quoting *Kukatush Mining Corp. v. SEC*, 198 F. Supp. 508, 510-11 (D.D.C. 1961)). We have not addressed squarely the availability of injunctive relief in defamation cases. Although the Supreme Court recently granted certiorari to address the question in the context of public figures in *Tory v. Cochran*, 544 U.S. 734 (2005), the Court ultimately vacated the injunction in that case on ground of overbreadth, as we do here. Following the Court's approach, we vacate the injunction as written and express no opinion on the constitutional validity of any new, narrowed injunctive relief the district court might think appropriate after considering all of the relevant factors. *Id.* at 738-39; *see also American Family Mut. Ins. Co. v. Roth*, 485 F.3d 930, 934 (7th Cir. 2007) (noting, after holding an injunction overbroad, that "rather than try to work out the details of a proper injunction," we should "remand the case to the district court for the entry of a better-drafted injunction").

## Conclusion

The district court's conclusion that issues of jurisdiction and service of process were waived by Spamhaus' con-

26

duct preceding the entry of the default judgment is not clearly erroneous. We therefore affirm the judgment as to liability and the denial of the motion for relief under Rule 60(b). We further conclude, however, that the district court failed to undertake an inquiry into the proof of damages and the necessity of injunctive relief and issued an injunction that is overbroad. We affirm the entry of a judgment of default. We vacate, however, that portion of the court's order granting e360's requests for relief and remand for proceedings consistent with this opinion. The parties shall bear their own costs in this court.

AFFIRMED in part;
VACATED and REMANDED in part

A true Copy:

Teste:

Clerk of the United States Court of
Appeals for the Seventh Circuit

USCA-02-C-0072—8-30-07