IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| e360 INSIGHT, LLC, an Illinois Limited Liability Company, and DAVID LINHARDT, an individual, | ) ) ) ) |
| Plaintiffs, | ) Case No. 06 C 3958 ) |
| v. | ) District Judge Charles P. Kocoras ) Magistrate Judge Geraldine Soat Brown |
| THE SPAMHAUS PROJECT, a company limited by guarantee and organized under the laws of England, a/k/a THE SPAMHAUS PROJECT, LTD., | ) ) ) ) ) |
| Defendant. | ) |

**THE SPAMHAUS PROJECT'S MOTION TO STRIKE THE
JANUARY 7, 2009 AFFIDAVIT OF DAVID LINHARDT**

The Spamhaus Project ("Spamhaus"), pursuant to Federal Rule of Civil Procedure 37(b)(2), moves this Court for entry of an order striking the January 7, 2009 Affidavit of David Linhardt and the exhibit to that affidavit.[1]  In support of this Motion, Spamhaus states:

1. On August 30, 2006, Plaintiffs filed Linhardt's first Affidavit.  In his August 30, 2006 Affidavit, Linhardt claimed that Plaintiffs suffered damages of approximately $11.7 million.  No exhibits or supporting calculations were produced in support of Linhardt's August 30, 2006 Affidavit while fact discovery was still generally open.

2. When asked during his deposition about his methodology for arriving at the $11.7 million damages claim, or whether he had any underlying records or workpapers reflecting his

---

[1] The January 7, 2009 Affidavit of Linhardt, and its accompanying Exhibit A entitled "Direct Damages from Spamhaus ROKSO Listing," was filed under seal per the Agreed Protective Order in this case, and attached as Exhibit 1 to Plaintiffs' Response in Opposition to Spamhaus' Motion in Limine (Doc. 190), and as Exhibit 2 to Plaintiffs' Response to Spamhaus' Rule 56.1 Statement of Facts (Doc. 194).

calculations, Linhardt testified that he did not recall how he calculated the number, and that he did not have any supporting documentation or workpapers reflecting his calculations:

- "Q: Just to be clear, you are not able to testify today as to the precise methodology used to get from the numbers in Exhibit 10 to the number in Paragraph 32 of Exhibit 9, correct?

  A: I don't recall specifically."

  Q: And you don't have any papers which reflect that, correct?

  A: I do not."

  (Linhardt Dep. 286-87.)[2]

- "Q: And I am focusing on quantitative. There's a number of $9.25 million. As you sit here today, can you tell me anything about the methodology that you used to come up with $9.25 million?

  A: No, I don't recall the specific methodology.

  Q: And you don't have any documents that reflect that, correct?

  A: That's correct."

  (Linhardt Dep. 288-89.)

3. In his January 7, 2009 Affidavit, Linhardt now claims, "Upon review of financial records I was able to recall how such damages were computed." (January 7, 2009 Affidavit at ¶ 8.) Linhardt attached a spreadsheet to his January 7, 2009 Affidavit as Exhibit A entitled "Direct Damages from Spamhaus ROKSO Listing." Spamhaus has never seen this document before and it was not produced to Spamhaus prior to or in the course of Linhardt's deposition.

---

[2] Citations to "Linhardt Dep." refer to the transcript of Linhardt's November 10-11, 2008 Deposition in this case, previously provided to the Court as Ex. 1 to Spamhaus' Memorandum of Law in Support of its Motion in Limine (Doc. 186).

4. Linhardt's January 7, 2009 Affidavit is not the first time that Plaintiffs have submitted an untimely document in support of their damages calculation. (*See* Doc. 157 at 1-4.)

5. After months of delay and the close of discovery, Plaintiffs filed their Supplemental Amended Responses to Spamhaus' Interrogatories on September 12, 2008, amending their damages claim to approximately $136 million.

6. When Spamhaus moved to dismiss for these discovery violations by Plaintiffs, this Court, in an Order dated October 15, 2008, ordered stricken any damages amounts in Plaintiffs' Supplemental Amended Responses to Spamhaus' Interrogatories in excess of $11.7 million, as well as Plaintiffs' identification of 16 previously undisclosed witnesses in support of their damages, citing the fact that "the course of action Plaintiffs have pursued is unacceptable." (Doc. 173.)

7. This Court should similarly strike the January 7, 2009 Affidavit of David Linhardt and the accompanying exhibit because Plaintiffs' untimely submission continues a well-documented pattern of contumacious disregard for discovery deadlines and proper procedure. (*See* Doc. 157 at 1-4.)

8. Further, Plaintiffs' use of Linhardt's January 7, 2009 Affidavit would be prejudicial to Spamhaus because the affidavit directly contradicts Linhardt's deposition testimony, and Spamhaus did not receive the Affidavit in the course of discovery and thus could not use it in the deposition of Linhardt, Plaintiffs' sole witness on damages. Linhardt's deposition was delayed numerous times, both due to Plaintiffs' failure to appear to properly noticed depositions (Doc. 156) and due to Plaintiffs' failure to provide timely responses to interrogatories and discovery requests regarding the basis for their damages claim. Spamhaus

3

was forced to wait over 9 months for this necessary discovery prior to deposing Linhardt on Plaintiffs' damages claim.

9. After this lengthy delay of Linhardt's deposition, Linhardt's testimony revealed that Plaintiffs had failed to produce all the documents underlying their damages claim. (Linhardt Dep. at 246-48, 267-68.) On the second day of Linhardt's deposition, Plaintiffs produced a version of a spreadsheet containing a calculation of Plaintiffs' direct damages that was different than versions previously produced to Spamhaus. (Linhardt Dep. at 246-48, 267-68.) Now, months later, Plaintiffs have produced ***yet another new, previously-undisclosed*** spreadsheet, that *again* claims to be a calculation and workpapers regarding Plaintiffs' damages. Plaintiffs' pattern of continually producing different, untimely, previously-undisclosed versions of their damages calculations is outrageous and begs the question of whether Plaintiffs actually know what damages, if any, they suffered due to Spamhaus' alleged conduct.

10. Furthermore, Exhibit A to the January 7, 2009 Affidavit of Linhardt should also be barred because it fails to produce, attach, or cite any underlying numbers or data used in its calculations. During this litigation, Plaintiffs have repeatedly asserted varying claims of revenue lost, days of service lost, number of emails blocked, etc. without substantiating any of their claims. Exhibit A to the January 7, 2009 Affidavit of Linhardt is more of the same, and should be disregarded by the Court for its inherent unreliability.

11. In addition to being untimely, prejudicial, and unreliable, the January 7, 2009 Affidavit of Linhardt should also be barred by this Court as an attempt to create a sham issue of fact contrary to prior deposition testimony in order to escape summary judgment. The Seventh Circuit has "long followed the rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions." *Bank of Illinois v.*

4

*Allied Signal Safety Restraint Sys.,* 75 F.3d 1162, 1168 (7th Cir. 1996).  Where a contradiction exists between earlier deposition testimony and an affidavit later submitted in opposition to a motion for summary judgment, the affidavit is properly disregarded.  *Ineichen v. Ameritech,* 410 F.3d 956, 963 (7th Cir. 2005) (disregarding Plaintiffs' later filed affidavit where she claimed that her coworkers made disapproving comments about her interracial relationship in contradiction to her earlier deposition where she stated that her coworkers never mentioned the interracial nature of her relationship).  The Seventh Circuit refuses to accept these "sham" affidavits that contradict earlier deposition testimony because they are inherently unreliable, and a mere attempts to manufacture a factual dispute in order to defeat summary judgment.  *Lorillard Tobacco Co., Inc. v. A & E Oil, Inc.,* 503 F.3d 588, 592 (7th Cir. 2007) (holding that Defendant's later filed affidavit contradicting his earlier deposition testimony that he always checked for counterfeit markings was an attempt to create a sham issue which "negate[d] his feigned ignorance").

       12.     In this case, Linhardt explicitly testified at his deposition that he did not have any supporting records or documents to support the methodology or numbers comprising Plaintiffs' $11.7 million damages claim. . (*See* Doc. 186 at 6-8, 14; Linhardt Dep. at 270, 272, 275-77, 279-81, 286-89.)  He then directly contradicted his previously sworn to statements in his January 7, 2009 Affidavit.  The January 7, 2009 Affidavit of Linhardt is explicitly disallowed under the law of the Seventh Circuit and thus properly stricken.

**Conclusion**

For the foregoing reasons, Spamhaus asks this Court to grant its Motion to Strike the January 7, 2009 Affidavit of David Linhardt.

Respectfully submitted,

THE SPAMHAUS PROJECT

Dated: January 28, 2009        By: s/ David Jiménez-Ekman
                                    Craig C. Martin
                                    David Jiménez-Ekman
                                    Chad Emerson Bell
                                    JENNER & BLOCK LLP
                                    330 North Wabash Avenue
                                    Chicago, IL 60611
                                    Telephone:   (312) 222-9350
                                    Facsimile:   (312) 527-0484

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of January 2009, a copy of the foregoing The Spamhaus Project's Motion to Strike the January 7, 2009 Affidavit of David Linhardt was filed electronically with the Court's CM/ECF system. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ David Jiménez-Ekman

1730030.4