No. 06 C 3958
(Judge Charles P. Kocoras)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

e360 INSIGHT, LLC, an Illinois Limited Liability Company,
and DAVID LINHARDT, an individual,

Plaintiffs,

v.

THE SPAMHAUS PROJECT, a company limited by guarantee and organized
under the laws of England, a/k/a THE SPAMHAUS PROJECT, LTD.,

Defendant.

THE SPAMHAUS PROJECT'S MEMORANDUM IN SUPPORT OF
RULE 59(e) MOTION TO ALTER JUDGMENT BY VACATING DAMAGES AWARD

Craig C. Martin
David Jiménez-Ekman
Joseph Dunn
Jenner & Block LLP
330 N. Wabash Ave
Chicago, IL 60611
(312) 923-2683

July 9, 2010              *Attorneys for Defendant*

**Introduction**

Defendant The Spamhaus Project ("Spamhaus") greatly appreciates the time and careful attention the Court has already devoted to this case. We also appreciate that motions to reconsider are rarely fruitful or helpful. However, in this particular case, as Your Honor knows, Plaintiffs' damages calculations and requests were a quickly moving target. Indeed, although evidence regarding e360 Insight LLC's monthly revenue from its relationship with SmartBargains, Vendare Media and OptinBig (the "Putative Lost Revenue") was offered at trial, Plaintiffs did not ask that an award of damages be based on the methodology the Court used – one month of those putative revenues. As a consequence, Spamhaus did not get an opportunity to point out the specific reasons why the problems we raised generally with Plaintiffs' various damages methodologies barred an award based on the Putative Lost Revenue. Given that history, while mindful of the disfavor in which motions to reconsider are held, we wanted to directly present the infirmities in the $27,000 award to Your Honor before raising them in the Court of Appeals in the hopes of ultimately conserving judicial resources.[1]

As Your Honor knows, after properly rejecting Plaintiffs' outlandish multi-million dollar claims for defamation and tortious interference with prospective economic advantage, the Court awarded Plaintiffs $27,000 for tortious interference with existing contract. (Ex. 1 hereto, 6/11/10 Mem. Op at 19.) Plaintiffs did not request $27,000 using Linhardt's complex and foundationless lost profits or lost enterprise value methods. Instead, the Court arrived at this amount after deconstructing Linhardt's initial request for 48 times the monthly revenue e360 received pursuant to alleged contracts with SmartBargains, Vendare Media, and OptinBig. (*Id*. at 19.)

---

[1] Spamhaus respectfully believes that the $27,000 award is erroneous for additional reasons that we have elected not to present in this motion because they have already been adequately presented to Your Honor. By making this motion, Spamhaus does not waive, and expressly reserves, any and all other grounds for appeal of the Court's judgment.

The Court stated that the Putative Lost Revenue amount was equivalent to the payments e360 would have received for one additional month's work with SmartBargains, Vendare Media, and OptinBig.  (*Id.*)

But the Court's award based on Linhardt's Putative Lost Revenue testimony suffers from several of the same foundational flaws the Court separately held barred an award based on Linhardt's more complicated offerings related to alleged lost profits and lost enterprise value. To be sure, Linhardt's lack of damages expertise, and lack of a sound damages methodology, did not themselves prevent him from offering factual testimony about his company's revenue.  But Your Honor already found that there were three *additional* (and independent) flaws in Linhardt's putative damages analyses that precluded an award based on the lost profits or lost enterprise value testimony, each of which *also* prevents the $27,000 award based on the Putative Lost Revenue.  These three flaws are the bases for our motion.

*First*, the $27,000 award is erroneous because the Putative Lost Revenue – the sole foundation for the Court's award – was *not* disclosed during discovery, and the Court already struck the information on motion as prejudicial to Spamhaus.  (Part I below.)  *Second*, the $27,000 award cannot stand because it is not *lost profits* but *lost revenue*, with no deduction for costs, which the Court has also correctly concluded cannot form the basis of a damages award. (Part II below.)  *Third*, the $27,000 award should be vacated because the Putative Lost Revenue is based on *consolidated* revenue data for all of Linhardt's entities, which the Court has also concluded cannot support an award for the two plaintiffs here.  (Part III below.)

I.  **The Court Should Vacate The $27,000 Award Because The Court Previously Ruled That Plaintiffs Were Barred From Relying On The Putative Lost Revenue Data Upon Which It Was Based.**

The first and most basic problem with the $27,000 award is that it is based on data the Court previously ruled Plaintiffs *could not use*. The Court is quite familiar with Plaintiffs' discovery defaults and we will not repeat the history, which appears in numerous motions in the record. However, the Court specifically *barred* Plaintiffs from using the Putative Lost Revenue that now forms the basis of the $27,000 award. Here is the bare bones chronology:

8/30/2006:   Linhardt offers default affidavit that claims $2,265,000 for active and pending contracts cancelled due to Spamhaus' alleged conduct; there is no explanation of the calculation of the amount in the affidavit. (D.E. No. 20.)

11/11/2008:  At his deposition, Linhardt produces for the first time a document that reflects the putative *gross* amount of lost revenue over time (not monthly) for SmartBargains, Vendare Media, and OptinBig, but testifies he has no recollection of the monthly revenue numbers used to make his $2.265 million estimate, and no papers that would refresh his recollection. (Ex. 2 hereto, 11/11/08 Linhardt Dep. at 272, 278, 280 & Ex. 10 thereto.[2])

---

[2] This testimony was about as explicit as it gets:

> Q: Any notes, any other written document or electronic document that you could rely on to refresh your recollection about the precise basis for that $288,000 [revenue] estimate [for tortious interference with e360's contract with SmartBargains]?
>
> A: Not that I was able to locate, no.
> . . .
>
> Q: So in reaching the $288,000 [damages calculation for tortious interference with e360's contract with SmartBargains] you don't have a specific recollection of that monthly figure you used to perform the calculation, correct?
>
> A: I don't as I am sitting here today, no.
>
> Q: And you have nothing written down that would help refresh your recollection?
>
> A: No.

(Ex. 2 hereto, 11/11/08 Linhardt Dep. at 272.) The testimony was similarly explicit with respect to Vendare and OptinBig. (*Id*. at 278, 280.)

3

12/2/2008:   Discovery closes with Linhardt producing no workpapers reflecting any monthly revenue amounts that went into the $2.265 million claim. (D.E. No. 176.)

12/9/2008:   Spamhaus moves for summary judgment in part on the basis that Linhardt's calculation offers no foundation. (D.E. Nos. 185-188.)

1/7/2009:    In response to motion for summary judgment, Linhardt offers affidavit that attaches an exhibit which contains, for the first time, the Putative Lost Revenue data. (D.E. No. 197; Ex. 3 hereto, 1/7/2009 Linhardt Aff.)

1/28/2009:   Spamhaus moves to strike the affidavit and the Putative Lost Revenue data attached to it. (D.E. 205.)

After this series of events, on February 23, 2009, the Court granted our motion to strike. The Court stated that:

> Although parties are required to supplement previous disclosures or discovery responses, the supplemental information must be provided in a timely manner. Fed. R. Civ. P. 26(e)(1)(A). If a party fails to comply with this rule, the party is not allowed to use the new information to supply evidence used for a motion unless the failure was substantially justified or is harmless to its opponent. Fed. R. Civ. P. 37(c)(1). e360 has not supplied any substantial justification for the late appearance of the new calculations. In addition, Spamhaus *would be harmed* if e360 were permitted to rely upon information to which Spamhaus did not have access during the discovery period. Accordingly, Rule 37(c)(1) prevents e360 from offering the January 2009 affidavit as evidence in opposition to the motion for summary judgment, and it is accordingly stricken.

(D.E. No. 211 (emphasis supplied).)

It was after this course of events that, without pointing out to the Court or Spamhaus that the exhibit had been stricken, Plaintiffs' counsel at trial handed Linhardt the referenced but never-admitted Defendant's Exhibit 8. (Ex. 5 hereto.) Linhardt misleadingly testified on direct examination that Defendant's Exhibit 8 "would have been [prepared], you know, in advance of us submitting it or submitting the output of it." (Ex. 4 hereto, Trial Transcript at 101.) Then, without seeking admission of the exhibit itself (or, apparently, intending to so do), Linhardt testified orally with the exhibit in front of him – i.e., reading from it – as follows:

> Q:   Okay. And during the time they were clients of e360, they regularly paid e360 for services?
>
> A:   That's correct.

4

> Q: Do you know how much they paid e360 for services?
>
> A: Yes. For SmartBargains, it was approximately [$]6,000 a month, on average; for Vendare, [$]15,000 a month; for OptinBig, $6,354 a month.

(Ex. 4, Tr. at 102.)  (This is the specific testimony to which we refer as the "Putative Lost Revenue" testimony.)  On cross examination, Linhardt again attempted to testify that Defendant's Exhibit 8 was the document "he had in hand when [he] prepared" the affidavit he submitted in support of default in August 2006.  (Ex. 4, Tr. at 133.)  However, when pressed, his *counsel* admitted that Defendant's Exhibit 8 was provided "I believe in 2009," which prompted the Court to admonish counsel that he had "misled" the Court.  (Ex. 4, Tr. at 136, 137.)

Given this chronology, with all due respect, it would be grossly unfair for the Court to let stand an award based on the Putative Lost Revenue testimony.  To be clear:  despite pressing in documents and at his deposition, Spamhaus was unable to get *any* information about the alleged lost monthly revenues, or how they were calculated, while discovery was open – full stop.  The Putative Lost Revenue data (which is the sole basis for the Court's $27,000 award) first surfaced on January 7, 2009, *after* discovery closed.  During summary judgment briefing, the Court struck the Putative Lost Revenue information on our motion because allowing Plaintiffs to use it would "harm" Spamhaus.

Of course, the language of Rule 37(c)(1) also prevents the use of this information at trial:  "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial . . ."  Fed. R. Civ. Proc. 37(c)(1).  Indeed, in reliance on the Court's ruling (and that it would apply at trial), Spamhaus did not seek additional out-of-time discovery regarding the Putative Lost Revenue data.  And, particularly given the flaws in Linhardt's various analyses the Court rejected, the prejudice from not having that discovery is far from academic.  Neither the Court nor Spamhaus ever received any information about how the Putative Lost Revenue was calculated:  there was no information regarding how long each third

party was a client; whether all months of the relationship were used to determine the average; if not, which months were omitted and why; or the nature of any backup documentation for the claimed lost revenue. Nor did Spamhaus have an opportunity to take discovery from the third parties based on Linhardt's improved recollection.

We recognize that, given the morass created by Plaintiffs' repeated discovery defaults and moving damages targets, it may not have been obvious that the Putative Lost Revenue information could not form a basis for an award. But given that the Court had previously ruled Plaintiffs could not use this information, and Spamhaus relied on that ruling, we respectfully ask the Court to reconsider, and vacate the award based on the stricken information.

**II.     The Court Should Vacate The $27,000 Award Because It Is Improperly Based On Lost *Revenue*, Not Lost Profit.**

The record provides no basis for an award based on the Putative Lost Revenue because a plaintiff is not entitled to lost *revenue*, only lost *profits*, about which Plaintiffs offered no evidence with respect to the Putative Lost Revenue. The party claiming damages bears the burden of proving those damages. *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 632 (7th Cir. 2007) (citing In Re Estate of Halas, 568 N.E.2d 170, 181 (Ill. 1991)). Plaintiffs asserting tortious interference with contract claims are entitled to lost profits, not lost revenue. *Taylor v. Meirick*, 712 F.2d 1112, 1121 (7th Cir. 1983). As the Seventh Circuit explained in *Taylor,* "a loss of revenue is not the same thing as a loss of profits." *Id*. Indeed, in rejecting Plaintiffs' lost profits claim in this case based on tortious interference with prospective economic advantage, Your Honor specifically held: "Last but certainly not least, rather than seeking to calculate lost profits, Linhardt focused only on revenue, failing to factor in costs or expenses that would need to be deducted to determine profits." (Ex. 1 hereto, Mem. Op. at 14.) Thus,

Plaintiffs bore the burden of establishing lost profits – the revenue they would have generated less the costs or expenses needed to determine net profits.

They did not do so.  As noted above, there is no document in evidence that reflects the Putative Lost Revenue.  Rather, the Putative Lost Revenue testimony appears on one page of the trial transcript.  That testimony, on page 102, relates to how much each of the third parties SmartBargains, Vendare, and OptinBig, "paid e360 for services."  (Ex. 4, Tr. at 102.)  Indeed, the language of the Court's award itself is that the $27,000 award is "equivalent to the amount of the *payments* e360 would have received for one additional month's worth of work."  (Mem. Op. at 19 (emphasis supplied).)  There is simply no information in the record that would allow the Court to make any kind of an estimate – let alone one to a reasonable certainty – of the expenses that would need to be deducted from how much was "paid" to arrive at profit.  The award of one month of Putative Lost Revenue simply cannot stand because it is an improper measure of damages, and there is no information in the record which would permit the Court to make an award based on the proper method, lost profits.

### III.     The Court Should Vacate The $27,000 Award Because There Is No Evidence That The Putative Lost Revenue Belonged Exclusively To Plaintiff e360.

It is axiomatic that Plaintiffs must show that they – and not some other entity – were the ones that suffered the injury claimed.  This they did not do.  The reason is that, as Your Honor found, there was no evidence in the record regarding the plaintiff e360.  Rather, all of the financial data, including the Putative Lost Revenue, was for the consolidated Maverick entities, which were *not* plaintiffs in the case.  As Your Honor held with respect to the profit and loss information Linhardt proffered (Ex. 1, Mem. Op at 8):

> The profit and loss statement Linhardt provided for e360 sets out the company's overall profits as $332,000.  Pls. Ex. 71.  However, given his admission that the

statement represented a consolidation of the revenue from all of the companies held by Maverick, the number attributable to e360 would have been even smaller. Linhardt testified that BargainDepot was not a separate entity from e360 and therefore all revenues recorded as being gained by BargainDepot were in fact those of e360. However, his description of the activities of the two companies demonstrates that their businesses were very different. Moreover, the documents included in Plaintiffs' Exhibit 5 show BargainDepot listed as a customer of e360, indicating that the two are in fact separate entities. Based on this countervailing evidence, we conclude that Linhardt's testimony that BargainDepot was never separate from e360 is not credible, and the true amount of e360's profit over its five years would be less than $332,000.

Respectfully, the Court's holding that Linhardt's testimony – about the lack of separation between e360 and other non-plaintiff Maverick companies – is "not credible" cannot be squared with the $27,000 award based on the Putative Lost Revenue. While Linhardt laid no foundation for the source of his Putative Lost Revenue information (Ex. 4, Tr. at 102), there is no evidence that there is any source other than the books and records of Maverick. As Spamhaus' expert, Lisa Snow, testified (*id*. at 303):

> The costs of [e360] and, in fact, the revenues cannot be determined because the revenue and costs of this company, e360, are commingled with other companies owned by Maverick, and so it is not possible to segregate those out in a way that would assist someone in determining what were the losses due to Spamhaus' actions or the losses related to the e-mail marketing business.

The Court's finding accepted this viewpoint. There is no evidence that the oral testimony of Linhardt does not suffer from the same flaw. That means that the Putative Lost Revenue testimony overstates the true amount of any damages for e360, and the $27,000 award on that basis should be stricken.

## CONCLUSION

For the foregoing reasons, the Court should vacate the judgment and enter a judgment awarding nominal damages only.

Date: July 9, 2010

                Respectfully submitted,

                s/ David Jiménez-Ekman
                Craig C. Martin
                David Jiménez-Ekman
                Joseph Dunn
                Jenner & Block LLP
                353 N. Clark Street
                Chicago, Illinois 60654
                (312) 923-2683 telephone
                (312) 840-7683 facsimile
                *Attorneys for Defendant*